IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUCAS HORTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:23-cv-02098-S-BT |
| | § | |
| MULTIPLAN INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case arises out of a series of alleged spam text messages that *pro se* Plaintiff Lucas Horton received in December 2022. Horton contends that despite registering his cell phone number on the national do-not-call (DNC) list, he received disruptive spam texts from an entity working on behalf of Defendant MultiPlan, Inc. in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq*., and Texas law. For the reasons explained below, the District Judge should **GRANT in part** and **DENY in part** MultiPlan's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 24).

**Background**

In his live pleading, Horton alleges that he is the "owner and customary user of a residential cell phone number ending in 0625" that he also "use[s] for business purposes at times." Am. Compl. ¶ 14 (ECF No. 22). He registered this phone number on the national DNC list in 2020, but alleges that MultiPlan—through an

agent—solicited him to purchase health insurance via text message in violation of the TCPA and Texas law.

Horton catalogues 13 text messages he received to his cell phone throughout December 2022, each of which "solicited [him] to call a phone number to enroll in a health insurance plan." *Id*. at ¶¶ 16–21. Horton claims that the "almost identical" text messages contained "generic content," did not address him by name, and came from an unmonitored phone number with which he had no prior relationship. *Id*. at ¶ 20.

In order to "identify who was behind the texts," Horton called two of the numbers that had texted him and purchased health insurance policies. *Id*. at ¶¶ 23–24. Although neither the text messages nor the operators on the phone calls provided any identifying information, Horton received a "welcome package" in the mail after purchasing the insurance policy that included an ID card with "MultiPlan's name, logo, and phone number" on it. *Id*. at ¶ 27. He also received an email from partnerservices@innovativepartnerslp.com that "gave 'partner access' to MultiPlan's website." *Id*. Horton avers that Innovative Partners is "sending these texts and selling MultiPlan's policies at [MultiPlan's] direction." *Id*. at ¶ 29.

Horton sued on September 20, 2023, bringing eight causes of action[1] and seeking money damages for violations of the TCPA and Texas law. Horton has

---

[1] These causes of action (COA) are: COA I—violation of 47 U.S.C. § 227(b)(1)(A); COA II—violation of 47 U.S.C. § 227(c)(3)(F); COA III—violation of 47 C.F.R. § 64.1200(d)(1); COA IV—violation of Tex. Bus. & Com. Code § 305.053(a); COA V—violation of 47 C.F.R. § 64.1200(d)(4); COA VI—violation of 47 C.F.R. §

amended his Complaint twice—once as a matter of course and once with leave of the Court and MultiPlan's consent after MultiPlan filed its original Motion to Dismiss. *See* Order (ECF No. 21). MultiPlan then filed the pending Motion to Dismiss Horton's Second Amended Complaint, which is now fully briefed and ready for a recommendation or determination. *See* Mot. Dismiss; Pl.'s Resp. (ECF No. 27); Def.'s Reply (ECF No. 29).

## Legal Standards

MultiPlan seeks dismissal under Rule 12(b)(6) based on Horton's failure to state a claim upon which relief can be granted. Mot. Dismiss 10. However, MultiPlan also contends that Horton "lacks standing" to bring his claims.

Because standing is necessary for subject matter jurisdiction, it is a threshold issue that the Court considers before examining the merits. To establish standing, a plaintiff must show that he "(1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision." *Ctr. for Bio. Diversity v. U.S. Env't Prot. Agency*, 937 F.3d 533, 536 (5th Cir. 2019). Congress, through the TCPA, created standing for certain individuals who suffer the intrusive injury of prerecorded phone calls. *Horton v. MultiPlan, Inc.*, 2021 WL 5868328, at *3 (N.D. Tex. Nov. 24, 2021), *adopted by* 2021 WL 5866893 (N.D. Tex. Dec. 10, 2021) (Scholer, J.) (*MultiPlan I*). At the pleading stage, general factual allegations of

---

64.1200(d)(2); COA VII—violation of Tex. Bus. & Com. Code § 302.101; and COA VIII—violation of Tex. Bus. & Com. Code § 301.052. *See* Am. Compl.

injury resulting from TCPA violations suffice to establish an injury in fact. *Jamison v. Esurance Ins. Servs., Inc.*, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

To survive MultiPlan's Rule 12(b)(6) challenge, Horton's complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's factual allegations must "'raise a right to relief above the speculative level,'" but they do not need to be detailed. *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (citing *Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 417 (5th Cir. 2010)). A plaintiff's claims have facial plausibility if he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

Additionally, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988

4

(5th Cir. Unit A Feb. 1981) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam)). However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992) (citing *Elliott v. Foufas,* 867 F.2d 877, 881 (5th Cir. 1989)).

### Analysis

Horton's occasional use of his cell phone for business purposes and his other TCPA lawsuits do not deprive him of standing to sue under the TCPA. Horton successfully alleges that MultiPlan was responsible for the contested texts, and sufficiently pleads violations of the TCPA and 47 C.F.R. §§ 64.1200(d)(1) and (4). However, Horton fails to state a claim under 47 C.F.R. § 64.1200(d)(2) because he does not allege that he explicitly asked MultiPlan not to call him, nor does he state a claim under Texas Business and Commerce Code Chapters 301 and 302 because those chapters do not apply to texts.

A. Standing to Sue Under the TCPA

MultiPlan argues that Horton lacks standing to assert his claims under the TCPA because—in MultiPlan's view—Horton cannot show that he has suffered an injury. *See* Mot. Dismiss 12–15. Specifically, MultiPlan argues that Horton's telephone number is not a consumer or residential line, and therefore that it is not protected by the TCPA. *Id.* at 13. Further, MultiPlan claims that as a "serial TCPA lawsuit filer," Horton is "not an innocent victim" and that he "abuses the TCPA to turn a profit." *Id.* at 15. In other words, MultiPlan argues, "as someone who hopes

for robocalls or texts to make a profit from statutory damages, Horton did not suffer an injury-in-fact." *Id.* Horton responds that his cell phone is for residential use, and that he uses the number for both business and personal calls. *See* Pl.'s Resp. 7. He also points the Court to a prior decision in a case he brought against MultiPlan, in which this Court rejected the same standing arguments that MultiPlan raises here. *See* Pl's Resp. 6; *see also* Mot. Dismiss 15–16 ("Admittedly, MultiPlan advanced similar standing arguments against Horton in a Motion to Dismiss that were ultimately rejected by [this Court in N.D. Tex. Civil Action No. 3:21-cv-01542].").

MultiPlan first insists that Horton uses his cell phone for business purposes, and therefore Horton cannot show that he was injured under the TCPA, which protects private residences only. Mot. Dismiss 14. Indeed, Multiplan submits "evidence" in the form of unauthenticated screen shots of internet search results, *see* Mot. Dismiss Ex. 1-3, to prove its assertion that Horton's cellphone is a business number. Even if the Court were inclined to accept this evidence, it is unavailing.[2] The TCPA expressly applies to cell phones, as well as in a variety of

---

[2] Under the 12(b)(6) standard, a court generally cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). Pleadings include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents attached to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Collins*, 224 F.3d at 499 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)). When a party presents "matters outside the pleadings" in support of a Rule 12(b)(6) motion to dismiss, the court has "complete

non-residential contexts, such as hospital phone lines and paging services—indicating that "Congress sought to remediate nuisance and invasion of privacy in a broader set of circumstances, not just in the home." *Cranor v. 5 Star Nutrition LLC*, 998 F.3d 686, 691 (5th Cir. 2021). The Fifth Circuit has concluded that "the TCPA cannot be read to regulate unsolicited telemarketing only when it affects the home." *Id.* And this Court has explained that "the TCPA anticipates damages on an individual basis because the contemplated plaintiff is an individual natural person or business with a limited number of phone lines on which it might receive telemarketing calls." *MCI Comms. Servs., Inc. v. 1st Utd. Telecom, Inc.*, 2012 WL 12884830, at *3 (N.D. Tex. Nov. 15, 2012); *Cunningham v. TechStorm, LLC*, 2018 WL 3118400, at *5 (N.D. Tex. May 29, 2018) (Ramirez, J.) (emphasis added) (citations omitted), *adopted by* 2018 WL 3117529 (N.D. Tex. June 25, 2018) (Scholer, J.) (same).

Horton states in his Amended Complaint that his cell phone number "is not even registered to [his] business[.]" Am. Compl. ¶ 14. Even if it was, Horton is the same individual or business with a "limited number of phone lines" that the TCPA seeks to protect. *See MCI Comms. Servs.*, 2012 WL 12884830, at *3; Am. Compl.

---

discretion" to either accept or exclude the evidence for purposes of the motion to dismiss. *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 196 & n. 3 (5th Cir. 1988); *King v. Life Sch.*, 809 F. Supp. 2d 572, 578 (N.D. Tex. 2011) (Ramirez, J.). If matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). Multiplan's evidence represents matters outside the pleadings. The Court, in its discretion, declines to accept the evidence and does not convert the motion to one for summary judgment.

¶ 37 ("The Plaintiff is a small business owner who relies on the telephone to conduct business and has no choice but to at least look at every call or text he receives"). Whether Horton uses his cell phone for mixed business and personal purposes is therefore not dispositive of his standing under the TCPA. *MultiPlan I*, 2021 WL 5868328, at *4.

MultiPlan's next argument is that Horton cannot show an injury because "he abuses the TCPA to turn a profit." Mot. Dismiss 15. MultiPlan directs the Court to the *Stoops* case, in which the plaintiff admitted to buying forty cell phones and purposely using them as her "business" to attract calls for the purpose of filing TCPA lawsuits. *Stoops v. Wells Fargo Bank, NA*, 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016). The Pennsylvania district court concluded—on summary judgment—that the plaintiff did not have standing because she lacked "the sort of interest in privacy, peace, and quiet that Congress intended to protect." *Id*. at 805. However, courts in the Fifth Circuit and elsewhere have interpreted *Stoops* narrowly, declining to adopt or extend its holding "to cases where the phone line or numbers at issue were not procured solely to receive telemarketing calls." *Cunningham v. Mark D. Guidubaldi and Assocs.*, 2019 WL 1119365, at *4 n.6 (E.D. Tex. Jan. 11, 2019) (collecting cases), *adopted by* 2019 WL 1117915 (E.D. Tex., Mar. 11, 2019). Further, "the court has squarely rejected the argument that because prolific filers turn telephone solicitations into money makers, they are not harmed and thus cannot bring a TCPA suit." *MultiPlan I*, 2021 WL 5868328, at *4. Indeed, this Court has previously rejected this argument by Multiplan as to Horton. *Id*.

Despite Horton's many lawsuits in this district and elsewhere, there is no indication on the face of the Second Amended Complaint that Horton procured his cell phone for the sole purpose of filing TCPA suits. MultiPlan's argument that Horton lacks standing due to his prolific TCPA lawsuits therefore fails. *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 126–27 (N.D. Tex. 2020) (holding that plaintiff's status as a "professional TCPA plaintiff . . . [did] not strip away his Article III standing"). Horton has alleged an injury fairly traceable to MultiPlan that is likely to be redressed by a favorable judicial decision—so Horton has standing to sue. *Mark D. Guidubaldi and Assocs.*, 2019 WL 1119365, at *4.

B. <u>MultiPlan's 12(b)(6) Motion to Dismiss</u>

Next, MultiPlan seeks to dismiss Horton's eight causes of action under Rule 12(b)(6) for failure to state a claim. MultiPlan argues that Horton's Second Amended Complaint must be dismissed because he fails to allege any facts supporting his allegations that the texts he received were sent on MultiPlan's behalf. Mot. Dismiss 17–20. Further, MultiPlan argues that Horton's claims under the FCC regulations fail because his phone is not a residential line, and that Horton's claims under the Texas Business and Commerce Code fail because his allegations are purely conclusory. *Id.* at 22–28.

Horton's factual allegations are sufficient to state a claim under Sections 227(b) and (c) of the TCPA and the Texas TCPA (COA I, II, and IV), as well as Sections 64.1200(d)(1) and (4) of the FCC regulations (COA III and V). But the

District Judge should dismiss the rest of Horton's claims for failure to state a claim upon which relief can be granted (COA VI, VII, and VIII).

1. *Horton's Claims under Section 227(b) and (c) and the Texas TCPA (COA I, II, and IV)*

MultiPlan challenges the sufficiency of Horton's Amended Complaint with respect to the alleged TCPA violations, arguing that Horton fails to adequately plead facts to show that MultiPlan or its agent sent the texts or that the texter used an automatic telephone dialing system (ATDS). Mot. Dismiss 11–18. But Horton has plausibly alleged that MultiPlan, through its agent, texted Horton without his consent using an ATDS of the TCPA.

The TCPA contains two distinct sections that grant individuals a private right of action. Under Section 227(b), the TCPA regulates various telecommunications devices and prohibits the use of certain technologies for calling several types of end-users without an emergency purpose or prior express consent of the called party. *Mims v. Arrow Fin. Svcs., LLC*, 565 U.S. 368, 373 (2012); *see* 47 U.S.C. § 227(b). In relevant part, Section 227(b) makes it unlawful for any person to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A).

Under Section 227(c), the TCPA delegates authority to the Federal Communications Commission (FCC) to promulgate regulations "to protect

residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). This subsection grants a private right of action to individuals "who ha[ve] received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [§ 227(c)]." 47 U.S.C. § 227(c)(5). Unlike Section 227(b), Section 227(c) does not regulate automated technologies; rather, it regulates calling practices to protect rights of privacy of those registered on the DNC list.

Therefore, "a TCPA violation occurs if: (1) the defendant messaged a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Horton v. Nat'l Republican Senatorial Comm.*, 2023 WL 372066, at *3 (N.D. Tex. Jan. 23, 2023).

   *a. Vicarious Liability*

MultiPlan argues that the Court should dismiss Horton's Amended Complaint because Horton does not plausibly allege that MultiPlan was responsible for sending the texts at issue. Mot. Dismiss 17. MultiPlan states that it "is not an insurance company, and it does not sell or broker health insurance policies to consumers," and moreover that "out of an abundance of caution, [it] conducted a search of its telecommunication platforms" and found "no calls or

texts [] made to Horton's cellphone."[3] *Id.* at 17–18. Horton responds that he "never claimed that Defendant actually sent the texts. Nor does he need to in order to establish liability on behalf of the Defendant." Pl.'s Resp. 10. "Regardless of who sent the texts," Horton argues, "they were sent on behalf of the Defendant." *Id.*

To support a TCPA claim or a claim under the FCC's regulations, a plaintiff can allege either direct liability by showing that the defendant initiated the offending telemarketing calls, or vicarious liability by showing that an entity in an agency relationship with the defendant initiated the calls. *See Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *3–4 (E.D. Tex. Aug. 8, 2019). A text message to a cellular telephone qualifies as a call under Section 227 of the TCPA. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). A plaintiff can establish vicarious liability in this context by common law agency principles. *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6582 at ¶ 24 (2013). An agency relationship exists where a principal "manifests assent to [an agent] . . . that the agent shall act on the principal's behalf and subject to the principal's control." *Lifestyles Dev.*, 2019 WL 4282039, at *4. Agency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to the inference of an agency relationship using generalized as opposed to

---

[3] To the extent Multiplan submits affidavit testimony in support of its statements, *see* Mot. Dismiss Ex. 3, the Court declines to consider such evidence in the context of a Rule 12(b)(6) motion to dismiss.

evidentiary facts. *Cunningham v. Politi*, 2019 WL 2519568, at *6 (E.D. Tex. April 30, 2019).

Here, Horton alleges that he received repeated texts throughout December 2022 that "solicited [him] to call a phone number to enroll in a health insurance plan," but that did not provide any further identifying information. Am. Compl. ¶ 21. He called one of the phone numbers that had texted him and purchased a health insurance policy. *Id.* at ¶ 24. Horton goes on to allege that "after purchasing the policies, [he] received emails and later a 'welcome package' in the mail." *Id.* at ¶ 27. The welcome email came from partnerservices@innovativepartnerslp.com and identified Innovative Partners as the texter. *Id.* In addition to the welcome email, Horton received an ID card with "MultiPlan's name, logo, and phone number" on it and "partner access" to MultiPlan's website. *Id.* at ¶ 27. Therefore, Horton alleges, "it is clear that MultiPlan had a large if not central role in the marketing and sale of these policies." *Id.*

Horton's Amended Complaint alleges sufficient facts to give rise to an inference of an agency relationship between MultiPlan and the texter. Horton need only provide generalized as opposed to specific evidentiary facts at this early stage—and he has alleged that after purchasing an insurance policy from the texter, he received a MultiPlan-branded ID card for the plan and was directed to MultiPlan's website through "partner access." These facts provide more than a bare assertion of vicarious liability. Instead, Horton implies that a relationship exists by showing the proximity between the text message from Innovative Partners and the

email providing MultiPlan's information. By providing the factual context of the text, the "welcome email," and the information Horton received in the mail, he traces the texts from the sender to MultiPlan. While MultiPlan insists that Horton's "allegations as to the relationship between MultiPlan and Innovative Partners are circular, confusing, and purely speculative," Horton cannot be expected to better explain the contours of the relationship between the two entities without the benefit of discovery.

At this early stage, taking Horton's allegations as true, the Court can infer the possibility that MultiPlan, through an agency relationship with Innovative Partners, directed the sending of the texts to Horton without his consent. *See Politi*, 2019 WL 2519568, at *7 (concluding that allegations that a caller represented she was calling on behalf of defendant and then plaintiff was connected to defendant was enough to establish agency relationship); *Callier v. Nat. United Grp., LLC*, 2021 WL 5393829, at *7 (W.D. Tex. Nov. 17, 2021) (concluding that the plaintiff had plausibly alleged an agency relationship by pleading facts tracing the calls to the defendant); *Horton v. Advantage One Brokers Corp.*, 2024 WL 251172, at *5 (N.D. Tex. Jan. 4, 2024) (Rutherford, J.), *adopted by* 2024 WL 252071 (N.D. Tex. Jan. 22, 2024) (Boyle, J.) (same).

   b. *Use of an ATDS*

MultiPlan argues that Horton's claims "premised upon 47 U.S.C. § 227 fail [because] he has not plausibly alleged that an ATDS was used to initiate the text messages he allegedly received." Mot. Dismiss 20.

An ATDS is equipment which has the capacity to store or produce phone numbers to be called using a random or sequential number generator, and to dial those numbers. 47 U.S.C. § 227(a)(1). Because plaintiffs face difficulty in knowing the type of calling system used without the benefit of discovery, plaintiffs can plausibly plead the use of an ATDS by alleging facts that indirectly suggest that such a device was used. *Horton v. Tex. Fed. for Children PAC, Inc.*, 2023 WL 3136422, at *4 (N.D. Tex. April 27, 2023) (Fitzwater, J.). For example, in cases involving allegedly unlawful text messages, "plaintiffs might rely on the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used." *Id.* (internal quotations omitted).

Here, Horton has adequately pleaded that an ATDS was used to send the text messages at issue. He alleges that the content of the texts was generic and did not address him by name, and further that he had no prior relationship or contact with the texter before receiving the messages. Am. Compl. ¶ 20. He also notes the number of identical messages within a short amount of time. *Id.* at ¶¶ 16–19. These allegations, construed liberally due to Horton's status as a *pro se* litigant and in the light most favorable to him as the nonmovant, are sufficient at this stage to plausibly plead that an ATDS was used to send the texts. *See Tex. Fed. for Children PAC*, 2023 WL 3136422, at *5 (concluding that allegations of the generic nature of the texts, the absence of a preexisting relationship between the plaintiff and the

sender, and the frequency of the messages were enough to plausibly allege the use of an ATDS).

Horton has plausibly alleged an agency relationship between MultiPlan and the entity that sent the text messages and that MultiPlan, through its agent, used an ATDS to send the challenged texts, despite Horton's presence on the national DNC list. Therefore, Horton successfully states a claim under Section 227(b) and (c) (COA I and II). Because Horton plausibly pleads his Section 227(b) and (c) claims, his claim under the Texas TCPA (COA IV), which is entirely dependent on the success of his Section 227 claims, should also survive. *See Callier*, 2021 WL 5393829, at *10 ("Where a plaintiff's underlying (federal) TCPA section 227(b) claims are cognizable, a plaintiff's state TCPA claims under Section 305.053 are as well") (internal quotations omitted).

   2. *Horton's Claims Under Section 64.1200(d) (COA III, V, and VI)*

In addition to his claims under Section 227 of the TCPA, Horton brings claims under 47 C.F.R. § 64.1200(d), the FCC's regulations promulgated to implement the TCPA (COA III, V, and VI). Section 64.1200(d) relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls. *See Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012). Section 64.1200(d) provides that:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

16

47 C.F.R. § 64.1200(d). This provision then lists "minimum standards" that must be met, including (i) a written policy, (ii) training of telemarketing personnel on DNC list rules and regulations, (iii) recording and disclosure of DNC requests, (iv) identification of sellers and telemarketers to callers, (v) a policy for any affiliated persons or entities, and (vi) maintenance of DNC lists. *Id.* at § 64.1200(d)(1)–(6). The regulations define telemarketing as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* at § 64.1200(f)(15). Section 227(c) of the TCPA allows a private right of action for a person who has received more than one telephone call within any 12-month period in violation of the FCC regulations. *See* 47 U.S.C. § 227(c)(5).

Horton alleges that MultiPlan has violated the FCC regulations by failing to maintain a written telemarketing policy available on demand in violation of Section 64.1200(d)(1), engaging in telemarketing without proper training on the existence and use of a DNC list in violation of Section 64.1200(d)(2), and failing to provide identifying information in the texts in violation of Section 64.1200(d)(4). Am. Compl. 10–11. MultiPlan argues that these Section 64.1200(d) claims must be dismissed because Section 64.1200(d) does not encompass cell phones and further because Horton has not provided sufficient factual allegations to support these claims.

Horton alleges that his phone is a residential line and his other factual allegations are sufficient to state a claim for failure to maintain a telemarketing policy available on demand and failure to provide identifying information under Sections 64.1200(d)(1) and (4) (COA III and V). However, his allegations fail to state a claim for failure to properly train employees on the existence and use of a DNC policy under Section 64.1200(d)(2) (COA VI).

### a. Residential Line

MultiPlan argues that Horton's claims under 47 C.F.R. § 64.1200(d) must be dismissed because Horton fails to plausibly allege that his phone number is a residential line. Mot. Dismiss 22–24. Defendants contend that "the majority of the persuasive precedent holds 47 C.F.R. § 64.1200(d) does not encompass cell phones." *Id.* at 22 (quoting *Johnson v. Palmer Admin. Servs., Inc.*, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022)). In response, Horton insists that Section 227 of the TCPA applies to cell phones—but does not address MultiPlan's argument that the FCC regulations at 47 C.F.R. § 64.1200(d) do not. *See* Pl.'s Resp. 15. In his section addressing standing, Horton clarifies that "both of his phones are residential," and that the "ATT account they are registered to is [his] spouse, not his business." *Id.* at 7–8.

Defendants identify—correctly—that Section 64.1200(d) applies explicitly to those making calls to "residential telephone subscribers." Mot. Dismiss 23; 47 C.F.R. § 64.1200(d). But courts in this district have determined that a call to a cell phone may be construed as being made to a residential subscriber when a plaintiff

pleads that the cell phone is being used for residential purposes. *See Hunsinger v. Alpha Cash Buyers, LLC*, 2022 WL 562761, at *2 (N.D. Tex. Feb. 24, 2022) (collecting cases); *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 131 (N.D. Tex. 2020). The FCC has also explained that "since determining whether any particular wireless subscriber is a 'residential subscriber,'" it will "presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'" In re Rules and Regs. Implementing the Tel. Cons. Protec. Act of 1991, 18 F.C.C.R. 14014, at *14 (2003).

In his Amended Complaint, Horton alleges that he is the "owner and customary user of a residential cellphone number," Am. Compl. ¶ 14, and that he has "been on the National DNC list since 2020." *Id.* at ¶ 4. In this procedural context, the Court should conclude that that Horton has alleged he is a "residential subscriber" for purposes of 47 C.F.R. § 64.1200(d). *Powers v. One Tech., LLC*, 2022 WL 2992881, at *2 (N.D. Tex. July 28, 2022) (Starr, J.).

### b. Factual allegations

MultiPlan insists that despite bringing claims that MultiPlan's telemarketing training policies are deficient, Horton "does not even make the foundational allegations that MultiPlan lacks such a policy" and "has alleged no facts to plausibly suggest that MultiPlan does not adequately train its personnel." Mot. Dismiss 24.

To successfully plead a violation of Section 64.1200(d)(1) and (2), a plaintiff may allege that he made an affirmative request to the defendant to stop calling him

or put him on a company specific DNC list, and that he requested a copy of defendant's DNC procedures. *See Callier*, 2021 WL 5393829, at *9 (collecting district court cases addressing the requirements for pleading a violation of Section 64.1200(d)); *Lifestyles Dev.*, 2019 WL 4282039, at *5 (E.D. Tex. Aug. 8, 2019). A telemarketer commits a violation under Section 64.1200(d)(4) if they fail to provide the name of the individual caller or texter, the name of the entity on whose behalf the text is being sent, and the entity's contact information. 47 C.F.R. § 64.1200(d)(4).

Here, Horton alleges that "a DNC policy was requested of the Defendant, but was ignored" and that "the plaintiff requested an internal DNC policy directly from MultiPlan as well as by responding to his welcome emails." Am. Compl. ¶ 5, p. 10. From these facts, taken as true and in the light most favorable to Horton, the Court can infer that MultiPlan did not have a DNC policy available on demand in violation of Section 64.1200(d)(1). However, Horton fails to allege that he made any kind of affirmative request directly to MultiPlan to stop calling him or put him on a MultiPlan-specific DNC list. It is not clear from these allegations that MultiPlan failed to properly train its employees on the existence and use of a DNC policy. Therefore, Horton's claims under Section 64.1200(d)(2) should be dismissed. *See Lifestyles Dev.*, 2019 WL 4282039, at *5 (dismissing plaintiff's claims under Section 64.1200(d) because plaintiff failed to allege that he affirmatively requested to be put on a DNC list); *Cunningham v. Greenstar Cap. Solutions, LLC*, 2018 WL 4572711, at *5 (E.D. Tex. Aug. 1, 2018) (one sentence of

allegations providing no detail as to the nature or extent of the violations insufficient to state a claim).

Horton includes sufficient facts in his Second Amended Complaint to plausibly allege that the texter failed to provide the proper identifying information required by Section 64.1200(d)(4) (requiring telemarketers to provide the name of the caller or texter, the entity on whose behalf the text is being sent, and a phone number or address at which the entity may be contacted). Horton alleges that "all texts solicited [him] to call a phone number to enroll in a health insurance plan," but "there was no identifying information in the texts . . . [and] as a result, [he] had no idea who was behind the texts." Taking these facts as true, Horton has provided a sufficient basis in the pleadings to state a claim that MultiPlan violated Section 64.1200(d)(4). *See Hunsinger v. 204S6th LLC*, 2022 WL 1110354, at *5 (N.D. Tex. March 23, 2022), *adopted by* 2022 WL 1102864 (April 13, 2022) (granting default judgment on Section 64.1200(d)(4) claims).

   3.  *Horton's State Law Claims (COA VII and VIII)*

Finally, MultiPlan moves to dismiss Horton's claims under Chapters 301 and 302 of the Texas Business and Commerce Code (COA VII and VIII). MultiPlan argues that Tex. Bus. & Comm. Code § 302.101 does not apply to texts, and even if it did, both causes of action should fail because Horton has "simply regurgitate[d] the statute and fail[ed] to connect any alleged facts to his legal statements." Mot. Dismiss 26.

Tex. Bus. & Comm. Code § 301.052 provides that a person who sells consumer goods through the use of a "telephone solicitor" may not charge a consumer's credit card unless the seller follows certain requirements, including providing a full refund within 30 days and providing a written contract to the consumer describing the goods or services, the total price, and the identifying information of the seller. *See* Tex. Bus. & Comm. Code § 301.052(1)–(2). Section 302.101 of the Code requires companies who make "telephone solicitations" to "hold a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Comm. Code § 302.101(a).

In his Amended Complaint, Horton alleges that "in accordance with the TX 301 a refund was requested for both policies with[in] 7 days purchase using the phone number in the welcome emails the Plaintiff received" and that "he has been given the runaround each time he called." Am. Compl. ¶ 32. He notes that "his requests for refunds have not been answered." *Id*. at ¶ 33. Horton also alleges that "[u]nder the TX 302, a seller may not make a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate," and that "the Defendant does not have this certificate." *Id*. at ¶ 7.

Based on a plain reading of the Texas Business and Commerce Code, Chapters 301 and 302 do not apply to text messages. Chapter 301 states that "in this chapter," a "telephone solicitor" is one who "makes or causes to be made a consumer telephone call." Tex. Bus. & Comm. Code § 301.001(5). Chapter 302,

similarly, defines "telephone solicitation" as "a telephone *call* a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." *Id.* at § 302.001(7) (emphasis added). At least one court in this district has expressly concluded that Chapter 302 does not apply to text messages. *See Powers*, 2022 WL 2992881, at *3–4 (noting that while other sections of the Code had been amended to apply to text messages, Chapter 302 had not, and therefore "[u]nder a plain reading of the Code, Chapter 302 does not apply to text messages"); *see also Pepper v. GVG Cap. LLC*, 2023 WL 205297, at *4–5 (S.D. Tex. Jan. 17, 2023) (concluding that Chapter 302 did not apply to text messages based on its plain language and *Powers*). Based on the reasoning in *Powers*, which applies to Chapter 301 as well as Chapter 302, the Court should decline to extend the Code to text messages. Because Horton does not allege any unlawful calls, only texts, his claims under Chapters 301 and 302 should be dismissed.

## Recommendation

For the foregoing reasons, the District Judge should **GRANT in part** and **DENY in part** MultiPlan's Motion to Dismiss, dismissing Horton's Texas state law claims (COA VII and VIII) and his Section 64.1200(d)(2) claim (COA VI). Horton's remaining claims should survive the Motion to Dismiss.

**SO ORDERED.**

June 7, 2024.

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved part from appealing the factual findings and legal conclusion of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United States Automobile Ass'n.* 79 F.3d 1415, 1417 (5th Cir. 1996).